**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LYTONE ENTERPRISE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-678-LPS |
| ) | |
| AGROFRESH SOLUTIONS, INC., ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

Presently before the court in this patent infringement action is defendant AgroFresh Solutions, Inc.'s ("Defendant" or "AgroFresh") motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (D.I. 9) For the following reasons, I recommend that the court DENY AgroFresh's motion to dismiss.

**II.    BACKGROUND**

On May 19, 2020, plaintiff Lytone Enterprise, Inc. ("Plaintiff" or "Lytone") filed this action alleging direct, indirect, and willful infringement of U.S. Patent No. 6,897,185 ("the '185 patent") by AgroFresh's accused SmartFresh ProTab and SmartFresh SmartTab products (the "Accused Products"). (D.I. 1)  The '185 patent, entitled "Formulation For Counteracting and Ethylene Response in Plants, Preparation Process Thereof, and Method Using the Same," discloses a product designed to preserve freshness and delay ripening in agricultural produce to extend its shelf life. ('185 patent, cols. 1:17-26; 2:16-26)  To achieve the stated purpose of the invention, the '185 patent claims an effervescent tablet formulation that delivers an agent such as

---

[1] The briefing associated with the pending motion is found at D.I. 10, D.I. 12, and D.I. 13.

1-methylcyclopropene ("1-MCP") to block the ethylene binding sites in produce.  ('185 patent, col. 6:11-14; D.I. 1 at ¶ 7)  The patent describes the instability of methylcyclopropene in its gaseous form, and it explains that the powder form presents disadvantages including susceptibility to premature wetting and errors in measurement.  ('185 patent, cols. 1:49-51, 1:66-2:3)  Forming tablets with the 1-MCP powder, as claimed in the '185 patent, allows for a more efficient and controlled release of the 1-MCP gas.  (D.I. 1 at ¶¶ 8-9)  Claim 1 of the '185 patent recites "[a]n effervescent tablet dosage comprising an agent for blocking the ethylene binding site in plants and an effervescent ingredient, in admixture with one or more acceptable carriers and/or excipients."  ('185 patent, col. 6:31-34; D.I. 1 at ¶ 10)

Lytone filed the PCT application leading to the issuance of the '185 patent on September 22, 2000.  (D.I. 1 at ¶ 10)  The following month, Lytone met with Rohm and Haas Company ("Rohm and Haas") to discuss a possible business relationship based on Lytone's idea for 1-MCP effervescent tablets.  (*Id.* at ¶ 12)  Rohm and Haas executed a non-disclosure agreement before reviewing Lytone's pending patent application, but it ultimately declined to enter into a business relationship with Lytone.  (*Id.*)  Instead, Rohm and Haas filed a provisional application the following year that was directed to effervescent 1-MCP tablets, resulting in the issuance of U.S. Patent No. 6,762,153 on July 13, 2004.  (*Id.* at ¶ 13) When Lytone learned in 2009 that Rohm and Haas had obtained a patent on its effervescent tablet invention, Lytone submitted a "Request for Refusal" letter to the United States Patent and Trademark Office ("USPTO") stating that the '185 patent either anticipates or renders obvious the claims of Rohm and Haas' patent.  (*Id.* at ¶ 14)

Rohm and Haas formed AgroFresh as its wholly-owned subsidiary in the late 1990s.  (*Id.* at ¶ 11)  The complaint alleges that Rohm and Haas and AgroFresh were aware of the '185

patent as early as 2006 because they cited the '185 patent during prosecution of many of their own patent applications around that time.  (*Id.* at ¶ 15)

### III.    LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted).  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  The court's analysis is a context-specific task

requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV.  DISCUSSION

### A.  Direct Infringement

AgroFresh has withdrawn its challenge to Lytone's cause of action for direct infringement of the '185 patent.  (D.I. 13 at 3)  Therefore, I recommend that the court deny the motion to dismiss as it pertains to direct infringement.

### B.  Induced Infringement

Under 35 U.S.C. § 271(b), "whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  In addition to showing direct infringement, a plaintiff asserting a cause of action for induced infringement must also show that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *see Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2014).  Knowledge of the patent, without knowledge of infringement, is not enough to establish liability for induced infringement.  *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 135 S. Ct. 1920, 1926 (2015).  Accordingly, the Federal Circuit has held that, "[f]or an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *Bill of Lading*, 681 F.3d at 1339).

### 1. Knowledge of the patent

AgroFresh argues that Lytone's complaint fails to adequately plead AgroFresh had pre-suit knowledge of the '185 patent beginning in 2006. (D.I. 10 at 11) According to AgroFresh, three of the patent prosecution documents cited in Lytone's complaint do not support its allegations of AgroFresh's pre-suit knowledge of the '185 patent because other entities owned the applications at the time the prosecution documents were submitted, and AgroFresh did not acquire the resulting patents until 2015. (*Id.* at 11-12) With respect to the fourth prosecution document, AgroFresh contends that inclusion of the '185 patent in an Information Disclosure Statement ("IDS") listing almost 100 prior art references is not plausibly indicative of actual knowledge. (*Id.* at 12)

In response, Lytone alleges that Rohm and Haas' disclosure of the '185 patent during prosecution of its own applications may be imputed to AgroFresh because AgroFresh is the successor-in-interest to Rohm and Haas' 1-MCP technology and patents. (D.I. 12 at 11-12) Lytone further contends that AgroFresh was independently aware of the '185 patent, as evidenced by its disclosure of the '185 patent to the USPTO in an IDS submitted in 2017. (*Id.* at 13) Lytone also asserts that AgroFresh gained knowledge of the '185 patent when, in 2015, it formally acquired the 1-MCP patents from Rohm and Haas that reference the '185 patent. (*Id.*)

The complaint plausibly alleges that AgroFresh had actual knowledge of the '185 patent prior to the filing of this lawsuit, stating that "AgroFresh and Rohm and Haas identified the '185 patent during the prosecution of many of their patent applications." (D.I. 1 at ¶ 15) In support of this allegation, the complaint attaches a 2017 IDS disclosing the '185 patent, which was filed in connection with AgroFresh's U.S. Patent Application No. 15/673,054. (D.I. 1, Ex. 6) It is well-established that an IDS discloses information "known to [the applicant] to be material to

5

patentability," and "[t]here is no duty to submit information which is not material to the patentability of any existing claim."  37 C.F.R. § 1.56.  By listing the '185 patent in the IDS, AgroFresh represented that it was aware of the '185 patent and believed it to be material to the patentability analysis for its own application.  Viewing all pleaded allegations in the light most favorable to the plaintiff,  the court finds the complaint plausibly alleges that AgroFresh knew of the '185 patent based on the listing of the '185 patent in AgroFresh's 2017 IDS.  *See Horatio Washington Depot Techs. LLC v. TOLMAR, Inc.*, C.A. No. 17-1086-LPS-CJB, 2018 WL 5669168, at *14-15 (D. Del. Nov. 1, 2018), *report and recommendation adopted*, 2019 WL 1276028 (D. Del. Mar. 20, 2019) (finding that the plaintiff sufficiently pleaded the defendants' knowledge of the asserted patents as of the date on which the defendants submitted the IDS form referencing a portion of the Orange Book that included the asserted patents).

The cases cited by AgroFresh on this issue are distinguishable from the circumstances presently before the court.  In *Olaf Sööt Design, LLC v. Daktronics, Inc.*, the court considered whether knowledge of the patent was shown by clear and convincing evidence on a motion for summary judgment.  325 F. Supp. 3d 456, 464 (S.D.N.Y. 2018).  The court concluded that knowledge of the patent by the defendant's outside prosecution counsel was not sufficient to establish knowledge by the defendant itself because the evidence of record showed that the defendant did not review the work of its prosecution counsel and the reference was "buried among 139 patents listed" in an IDS.  *Id.* at 464.  Under the circumstances, the court found that these allegations were insufficient to prove the defendant's knowledge for purposes of willful infringement.  *Id.*  Here, however, the question before the court is not one of proof, and discovery has not yet occurred that would show the nature of AgroFresh's role in the prosecution of its own patent applications.  At this stage of the proceedings, and in accordance with the plain

language of 37 C.F.R. § 1.56, it is plausible to assume that AgroFresh had knowledge of the '185 patent as of the time it was listed in AgroFresh's own IDS form in 2017.

In *DermaFocus LLC v. Ulthera, Inc.*, the court held that the pleading failed to sufficiently allege Ulthera's pre-suit knowledge of the patent where the patent was listed as one of seven prior art references on an IDS filed by Michael Slayton, a founder and current board member of Ulthera. 201 F. Supp. 3d 465, 471 (D. Del. 2016). When Mr. Slayton submitted the patent application, however, the application identified the assignee as Guided Therapy Systems, Inc., and there was no indication that Mr. Slayton was associated with Ulthera at the time. The court concluded that, although it was conceivable Mr. Slayton knew of the patent and shared his knowledge with Ulthera, it was not likely or reasonable to infer that Ulthera had knowledge of the patent at that time. *Id.* In this case, by contrast, AgroFresh was identified as the assignee of the patent application at the time the IDS listing the '185 patent was submitted. (D.I. 1, Ex. 6 at 2)

In *Callwave Communications LLC v. AT & T Mobility LLC*, the court described "citation to the [patent-in-suit] in multiple Information Disclosure Statements" as a "solitary piece of information . . . insufficient to support an allegation of willfulness." C.A. No. 12-1701-RGA, 2014 WL 5363741, at *2 (D. Del. Jan. 28, 2014). Here, however, citation to the '185 patent in IDS forms is not the only allegation supporting Lytone's allegation of pre-suit knowledge. The complaint alleges that Lytone disclosed its effervescent 1-MCP tablet invention and the application leading to the issuance of the '185 patent to Rohm and Haas pursuant to a non-disclosure agreement in 2000. (D.I. 1 at ¶ 12) Rohm and Haas then allegedly filed its own provisional patent application for effervescent 1-MCP tablets mirroring the substance of Lytone's '185 patent. (*Id.* at ¶ 13) The complaint defines the relationship between Rohm and

7

Haas and AgroFresh, its wholly owned subsidiary, by explaining that AgroFresh was formed in the 1990s to assume responsibility for its 1-MCP products.  (*Id.* at ¶ 11)  Although the parent-subsidiary relationship alone is not enough to impute the knowledge of the parent to the wholly-owned subsidiary, *see Varian Med. Sys., Inc. v. Elekta AB*, C.A. No. 15-871-LPS-CJB, 2016 WL 3748772, at *5 (D. Del. July 12, 2016), *report and recommendation adopted*, 2016 WL 9307500 (D. Del. Dec. 22, 2016), Lytone's complaint and the attachments thereto support Lytone's position that AgroFresh was also the successor-in-interest to Rohm and Haas' 1-MCP technology and patents, (D.I. 1 at ¶ 11; Ex. 2 at 8, Ex. 3 at 5, Ex. 4 at 4).  In combination, these allegations give rise to a reasonable inference that AgroFresh had pre-suit knowledge of the '185 patent. *See Softview LLC v. Apple Inc.*, C.A. No. 10-389-LPS, 2012 WL 3061027, at *5-6 (D. Del. July 26, 2012) (holding that the plaintiff alleged a plausible basis to infer pre-suit knowledge of the patent when three individually insufficient bases of knowledge were viewed in combination).

### 2. Knowledge of infringement and specific intent

AgroFresh contends that the complaint also fails to plead any facts supporting the allegation that AgroFresh knew the use of its accused two-tablet system constituted infringement of the single tablet dosage claimed in Lytone's '185 patent, or that AgroFresh had the specific intent to induce infringement.  (D.I. 10 at 12, 14)  In support of its position, AgroFresh cites Lytone's failure to send a pre-suit letter or identify other supporting facts suggesting that Lytone identified the '185 patent and the allegedly infringing features of the Accused Products.  (*Id.* at 13-14)  According to AgroFresh, allegations that AgroFresh gave its customers instructions or marketing materials on how to use the Accused Products in an infringing manner are insufficient to infer AgroFresh's intent to encourage others to infringe the '185 patent.  (*Id.* at 14-15)

8

In response, Lytone argues that the complaint identifies documents from AgroFresh showing that AgroFresh knew its Accused Products infringed the '185 patent. (D.I. 12 at 13) Despite this knowledge, Lytone alleges that AgroFresh provided instructions, documentation, and marketing materials to its customers instructing them to use the Accused Products in an infringing manner. (*Id.*)

The allegations in Lytone's complaint give rise to a reasonable inference that AgroFresh knowingly induced its customers to infringe the '185 patent. For the reasons previously stated at § IV.B.1, *supra*, the complaint adequately pleads that AgroFresh had knowledge of the '185 patent, and there is no dispute that the complaint alleges AgroFresh makes the Accused Products and instructs its customers to use the Accused Products in an infringing manner. (D.I. 1 at ¶¶ 15, 20, 24) Although AgroFresh argues that these allegations alone are insufficient to support an inference that AgroFresh knew its customers' use of the Accused Products would infringe the '185 patent, *see Bonutti Skeletal Innov. LLC v. Smith & Nephew, Inc.*, C.A. No. 12-1111-GMS, 2013 WL 6058472, at *1 n.5 (D. Del. Nov. 18, 2013), Lytone's complaint contains additional allegations supporting an inference that AgroFresh knew its customers' use of the Accused Products infringed the '185 patent. In addition to alleging that "AgroFresh supplied users with instructions, documentation, and marketing materials that instructed them how to use AgroFresh's Accused Products with knowledge that usage in accordance with their instructions infringed at least claim 1 of the '185 patent," (D.I. 1 at ¶ 24), the complaint incorporates by reference AgroFresh's May 2018 Safety Data Sheets on the accused pink and yellow SmartFresh ProTabs, (*id.* at ¶ 21; D.I. 1-7 at 10-11, 13, 28-29, 31). The Safety Data Sheets outline the composition, ingredients, and physical and chemical properties of the SmartFresh ProTabs. (*Id.*) When this data is considered in conjunction with AgroFresh's prior knowledge of the '185

9

patent, it is plausible to infer that AgroFresh knew its customers infringed the '185 patent by using the Accused Products.  *See DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 471 (D. Del. 2016) (concluding that allegations of direct infringement, along with distribution of promotional materials and use of the accused system by a third party, were sufficient to raise a plausible inference that defendants knew the intended use of the accused system was infringing and had the specific intent to induce infringement).

These allegations similarly support a plausible inference that AgroFresh had the specific intent to induce infringement.  "[T]he plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (quoting Twombly, 550 U.S. at 556).  By pleading that AgroFresh had knowledge of the '185 patent and the composition of its own Accused Products, but nonetheless distributed the Accused Products to its customers with instructions on how to use the Accused Products in an allegedly infringing manner, Lytone has adequately pleaded that AgroFresh had the specific intent to induce its customers to infringe the '185 patent.  *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017) (concluding that allegations of knowledge of the patent-in-suit, its scope, and the products covered thereby, and directions to third parties in installation of the accused product, were sufficient to establish intent to infringe).

### C. Willful Infringement

The complaint also states a plausible claim for willful infringement.  To state a claim for willful infringement, the pleading "must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that

knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Välinge Innovation AB v. Halstead New England Corp.*, C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018); *see also VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-966-CFC, 2019 WL 1349468, at *1 (D. Del. Mar. 26, 2019) (stating that knowledge of the patents and knowledge of infringement are elements of willful, induced, and contributory infringement). For the reasons previously stated at §§ IV.A and IV.B.1, *supra*, the complaint plausibly alleges a cause of action for direct infringement and AgroFresh's knowledge of the '185 patent. As explained in § IV.B.2, *supra*, the complaint further alleges that AgroFresh knew, or should have known, that its conduct amounted to infringement of the '185 patent. (D.I. 1 at ¶¶ 11-15, 20-21, 30-31; D.I. 1-7) "[G]eneralized allegations of willfulness are sufficient to withstand a motion to dismiss." *Rhodes Pharms. L.P. v. Indivior, Inc.*, C.A. No. 16-1308-MSG, 2018 WL 326405, at *9 (D. Del. Jan. 8. 2018) (citing *Bio-Rad Labs Inc. v. Thermo Fisher Scientific Inc.*, 267 F. Supp. 3d 499, 500-01 (D. Del. 2017); *DermaFocus*, 201 F. Supp. 3d at 472). Accordingly, the complaint plausibly alleges a cause of action for willful infringement when viewed in the light most favorable to Lytone.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court DENY AgroFresh's motion to dismiss. (D.I. 9)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10)

pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 12, 2021

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE